NŒSEN and others vs. THE TOWN OF PORT WASHINGTON and others.

RAILWAY CORPORATION. (1) *Material change of route, invalidates obligation of nonassenting subscriber to stock.* (2) *Taxpayers may enjoin issue of bonds, when town not bound.* (3) *Estoppel by answer.*

PRACTICE. (4) *Where no bill of exceptions, only record reviewed.*

1. The M., M. & G. B. Railroad Co. was authorised by its charter to construct a railroad from Milwaukee northerly *via* the cities of Sheboygan and Manitowoc to Green Bay; with power to change and relocate its road

" so as not materially to change the route," and to connect its road with any other railroad; and any company having a road built, or partly built, *running in the direction* of the line above described, was authorized to lease or sell any part of its road to said first mentioned company. After the defendant town had subscribed to the stock of said M., M. & G. B. Co., the latter, without the consent of the town, acquired the franchises of another company pertaining to a line of railroad from Manitowoc to Appleton, about forty miles in length and running *nearly at right angles* with the line first above described; and this road the M., M. & G. B. Co. proposed to construct and operate. *Held*, that this was such a fundamental change in the character of the enterprise contemplated by that company, as to release nonassenting stock subscribers from payment of their stock subscribed before the company had acquired, or was authorized by law to acquire, such additional line of road.

2. Taxpayers of said town may maintain this action against the town, its officers, and the railroad company, to restrain the issue of bonds in payment of a stock subscription by which the town is no longer bound.

3. The original complaint, and the answer of the defendant town thereto, were filed before the change above described in the railroad company's enterprise; and in such answer the town admitted its liability to pay the stock subscription. Afterwards, the company having undertaken to construct said new line of road, the facts were set up in an amended complaint. *Held*, that the town is *not estopped* by its former answer from now denying the obligation of its said subscription.

4. In the absence of any bill of exceptions, no question is before this court except such as are presented by the record proper.

APPEAL from the Circuit Court for *Winnebago* County.

Action brought by *Nœsen* and several others, taxpayers of the town of Port Washington, in behalf of themselves and other taxpayers, against said town, its supervisors and clerk, to restrain the town and such officers from subscribing in the name, and on behalf, of the town to the capital stock of the *Milwaukee, Manitowoc & Green Bay Railroad Company*, and from executing any bonds of the town in payment therefor. The complaint alleged sundry illegalities in the election and notice thereof, which election was held under the provisions of ch. 242, of the Private and Local Laws of 1870, for the purpose of sub-

mitting to the legal voters of the town a proposition to sub-
scribe to the capital stock of said company, and issue the
bonds of the town therefor to the amount of $30,000. The
answer of defendants alleged the legality of the election, and that
pursuant to the vote of the people, they, the town officers
of *Port Washington*, had subscribed for stock in said company
in behalf of the town ; and that they intended to issue bonds
as by the vote of the people directed.

The case being called for trial, the court, of its own motion,
ordered that the summons and complaint be amended so as to
make the railroad company mentioned in the pleadings, or
other parties claiming the bonds of said town pursuant to said
election, parties defendant to the action; and that such amended
summons and complaint be served on the new parties. There-
upon, the amended complaint was served on the new parties.
Among other things, it alleges, that since the election, the said
*Milwaukee, Manitowoc & Green Bay Railroad Company*, without
the consent or knowledge of said town, has materially enlarged
and extended its route, which it will assume and undertake to
construct and operate, by the purchase, consolidation or acqui-
sition of the rights and franchises of the Appleton and New
London Railway Company, pertaining to that part of the line
of the last named road extending from Manitowoc to Appleton,
and proposes and intends to construct and operate said line, be-
ing about 40 miles in length, in addition to its lines which it
was authorized to construct at the time of said election ; that
said line from Manitowoc to Appleton does not run in the di-
rection which said *Milwaukee, Manitowoc & Green Bay Railroad
Company* was, by its act of incorporation, authorized to con-
struct and operate a road, but nearly at right angles with the
same, and that the town of *Port Washington* has never con-
sented to the purchase by that company of said additional line,
nor to the consolidation of such road with the road of that
company in any manner; that in view of such change it had
changed its name, and assumed the name of the *Milwaukee,*

Nœsen and others vs. The Town of Port Washington and others.

*Lake Shore & Western Railroad Company*, and claimed to be entitled to the bonds of said town. The railway company answered the amended complaint, alleging the due submission of the proposition to the people of said town, at an election regularly called and held, their acceptance of the proposition by a large majority of the legal voters, etc. The answer denies, that since the election, under which the bonds were claimed, " anything whatever has been done by change of name, extension of road, acquisition of another line, or in any way or manner, increasing the liability of said town as a stockholder of this company, or materially affecting its rights or liabilities; or that it has extended its route in a direction not authorized by law, or in any respect exceeded its powers, or changed the contract between it and said town."

The court below found, as facts, that the election was duly held, a majority of the votes cast in favor of the aid to the road by subscription and the issue of bonds as proposed; and as conclusion of law, that the plaintiffs had failed to make out a case, and ordered judgment that their complaint be dismissed. From judgment thereon the plaintiffs appealed. No bill of exceptions appears in the record.

*Smith & Stark*, for appellants, argued *inter alia*, that the change in the objects and purposes of the railroad company, after the subscription by the town, released the town from its obligation; that such change was alleged and not denied. The allegation in the answer makes no issue upon the facts but traverses only their legal consequences. The change alleged was a material departure from the original purpose and design of the company. *Kenosha, Rockford & R. I. R. R. Co. v. Marsh*, 17 Wis., 13; *Marsh v Fulton Co.*, 10 Wall., 676; *McCullough v. Moss*, 15 Denio, 580; *Hartford & N. H. R. R. Co. Croswell*, 5 Hill, 383; *Livingston v. Lynch*, 4 Johns. Ch., 573.

*F. W. Cotzhausen*, for respondents.

COLE, J. There being no bill of exceptions in this case, we

can only consider such questions as arise upon the record. *Blossom v. Ferguson*, 13 Wis., 76. It is claimed on the part of the plaintiffs, that there was such a material change in the route, and such a fundamental departure from the original purposes of the company, as released the town from its obligation to pay its subscription or issue its bonds. This question is doubtless presented by the record.

It is alleged in the complaint, that since the election of October, 1871 (which authorized the officers of the town to make the subscription to the stock of the company), the Milwaukee, Manitowoc & Green Bay Railroad Company, without the consent or knowledge of the defendant town, has materially enlarged and extended the route which it will assume and undertake to construct and operate, by the purchase, consolidation, or by the acquisition in some manner, of the rights and franchises of the Appleton & New London Railway Company pertaining to that part of the line of the latter company extending from Manitowoc to Appleton, and proposes and intends to construct said line so acquired, being about forty miles in length, in addition to the lines which it was authorized to construct and operate by its charter at the time of the election and subscription. This allegation is not denied in the answer of the town. Nor does the railroad company traverse the fact stated of the acquisition or purchase of the Appleton branch, but, as a legal conclusion, denies that it has done anything, by change of name, extension of road, or purchase of another line, which increases the liability of the town or materially affects its rights. It is obvious that this is no denial of the act of purchase without the consent of the town, but tenders an issue upon a mere question of law. For the purposes of this case, then, it must be assumed, that the fact stated in the complaint is true; and we are to inquire as to what was the legal effect of the purchase of the Appleton road upon the liability of the town. If its effect was to exonerate the town from its liability on its subscription previously made, there can be no doubt but the

plaintiffs may avail themselves of that defense in this action. By the charter (P. & L. Laws of 1870, ch. 242, sec. 2), the company was authorized to locate and construct a railroad from " some convenient point in the city of Milwaukee, running thence northerly through the counties of Ozaukee (to Port Washington, within three quarters of a mile from the village) and Sheboygan, to the cities of Sheboygan, Manitowoc, and northerly to Green Bay." The termini and general direction of the route are fixed by the charter, and the company was only authorized to change and relocate its road " so as not materially to change the route." The Appleton road runs westerly from Manitowoc, nearly at right angles with the original line. It seems to us very obvious that the purchase of that road was not such a change of the original route as was authorized by the charter, or which could be said to be in the contemplation of the parties when the subscription by the town was made. It is true that sec. 3 authorized the company to connect its road with any other railroad ; and any company having a road built or partly built, *running in the direction of the line which the defendant corporation was empowered to construct and operate*, was therein authorized to lease or sell to the latter the whole or any part of its road, so wholly or partly ·constructed. But this provision does not confer upon the company any power to acquire the Appleton line, since that road does not run in the direction of its line, but nearly at right angles with it. And so the question returns, whether the purchase or acquisition of this forty miles of road, not running in the direction of its line, but nearly at right angles with it, constituted such a change in the original enterprise as to release a nonassenting subscriber from his obligation to pay his stock subscription. It is claimed by the learned counsel of the defendant railway, that it should not have that effect, because he insists that no part of the original design or objects of the corporation has been abandoned ; that no part of the original line has been changed ; and that the town will fully realize all the advantages which it could reason-

ably anticipate from the construction of the road to which it subscribed.

In *Kenosha, R. & R. I. R. R. Co. v. Marsh*, 17 Wis., 13, Mr. Justice PAINE says all the authorities concur in holding as a general rule that a radical, fundamental change in the character of the original enterprise releases the stock subscriber who does not assent to the change; that in the application of the rule many cases will be found where the particular change made was held not of such a radical character as to exonerate the stockholder from the payment of his subscription; but the alteration in that case was decided to have that effect. It seems to us that the principle and reasoning of the decision in the Marsh case are strictly applicable to the one under consideration, and control as to the liability of the town. The road authorized by the charter, and for the construction of which the town subscribed, was one running from the city of Milwaukee in a northerly direction to or within three quarters of a mile of the village of Port Washington, thence to the cities of Sheboygan, Manitowoc and Green Bay. This was the original enterprise. But it appears that the company has acquired another road running westerly in an entirely different direction, which it proposes to construct. If this is not an essential change in the objects of the corporation and a diversion of its funds to another enterprise, it is difficult to imagine what would amount to such a change. The counsel for the company contends, because no part of the original line has been abandoned, that therefore the acquisition and construction of the Appleton road is not such a change as should release the town from the payment of its subscription. It seems to us that it would be a most dangerous doctrine to receive judicial sanction, that so long as a railroad corporation did not finally abandon the construction of its original road, it might acquire and construct any number of roads running in an entirely different direction from such road, providing it made a connection with them, and still hold a nonassenting

stock subscriber.   The fact is, when the town made its subscription, the only change which the company was authorized to make was such as did not materially change its route.   This is the limitation upon its power to alter or change its route, contained in the charter itself.   It must be assumed that the electors of the town acted in view of that provision in the charter, and that they would not have authorized the subscription, had they supposed it would be diverted to the construction of a road running in a different direction from the proposed line.   At all events the town, or a taxpayer of the town, may insist that there has been such a change in the objects and designs of the corporation as to absolve a nonassenting subscriber.   For, unless such a change is held to be a violation of such contract of subscription, there is no limit to the right of the corporation to acquire additional roads and extend its liabilities without affecting such subscriber.   The limit of the power of the corporation to make alterations in its road is quite clearly defined in the charter.   It may "from time to time alter, change and relocate" its road "so as not materially to change the route," without affecting a contract of subscription as originally made.   A change of that character and within that limit might be essential to facilitate the successful prosecution of the very object for which the company was created, and the charter authorizes it to be made.   But, within the decision in the Marsh case, we think the acquisition of the Appleton road did amount to a radical, fundamental change in the character of the original enterprise, and released the town from its obligation to pay its subscription.   There is a full and able discussion of the subject in that case, in which many of the cases bearing upon the question are cited.   We need not, therefore, further examine them here.

The counsel for the railway company, however, referred to the case of *Nugent v. The Supervisors*, 19 Wall., 241, for the purpose of showing that the town was not released from its engagement to pay its subscription on account of the purchase or

acquisition of the Appleton road.    We have examined that case, but find nothing in it inconsistent with the views above announced.    In *Nugent v. The Supervisors*, the question was presented as to the legal consequences of an act of consolidation by two railroad companies, and whether such consolidation released a county from its prior undertaking to take stock in one of them and issue its bonds in payment.    The consolidation was authorized by a previously enacted general law of Illinois, and by a section of the charter of the company to which the subscription was made.    Mr. Justice STRONG, in considering the question, says:    " It was therefore contemplated by the legislature, as it must have been by all the subscribers to the stock of the company, that precisely what has occurred might occur. Subscribers must have been presumed to have known the law of the state, and to have contracted in view of it.    When the voters of the county of Putnam sanctioned a county subscription by their vote, and when the board of supervisors, in pursuance of that sanction, resolved to make the subscription, they were informed by the law of the state, that a consolidation with another company might be made, that the stock they proposed to subscribe might be converted into stock of the consolidated company, and that the liability they assumed might become owing to that company.    With this knowledge, and in view of such contingencies, they made the contract.    The consolidation, therefore, wrought no change in the organization or design of the company to which they subscribed, other than they contemplated at the time as possible and legitimate.    It cannot be said that any motive for their subscription has been taken away, or that the consideration for it has failed."    pp. 249, 250.    But the court recognizes the general rule, that a subscriber to the stock of a railroad company is released from obligation to pay his subscription by a fundamental change in the objects and purposes of the company, to which he has not consented, but say the rule is inapplicable to that case.    See *Marsh v. Fulton County*, 10 Wall., 676.    The company acquired the Appleton

road after the town made its subscription. But when the subscription was made, there was nothing in the general law of the state, so far as we are advised, and nothing in the charter, which authorized the company to acquire the Appleton road; and there is therefore no ground for saying that the voters of the town must have contemplated that result as possible and legitimate when they voted to enter into the contract.

This action was commenced by service of the summons and complaint, October 31, 1871. The town filed its answer in November of the same year. Afterwards an amended complaint was filed, in which this alteration or change was set up and relied upon to invalidate the subscription. The question has suggested itself, whether the town was estopped by the admission in the answer, that it was bound to take the stock subscribed for, and to pay for the same. But we think the town is not estopped by this admission, because it appears that its answer was put in before the change was made which released it from its subscription.

Without expressing any opinion upon the other questions discussed, we think the judgment of the circuit court must be reversed, and the cause remanded with directions to grant the relief asked in the complaint.

*By the Court.* — It is so ordered.

A motion for a rehearing was denied.