# THE STATE *vs.* FRANCIS DUNNINGTON, and others, Commissioners of Charles County.

The duty imposed upon the county commissioners by the act of 1831, ch. 281, sec. 8, of taking bond with sufficient security from the county collectors, for the collection of the colonization tax imposed by that act, is a *judicial* and not a *ministerial* duty, requiring the exercise of *judgment* and *discretion*, and a mere *error of judgment* in the discharge of this duty, gives the State no right of action against such commissioners.

State *vs.* Dunnington, *et al.*

APPEAL from the Circuit Court for Charles county.

This was an action on the case brought on the 28th of March 1855, by the State against the appellees, as late commissioners of Charles county.

The declaration complains, that whereas, on the first Monday of October 1840, the defendants were, by the act of 1839, ch. 73, duly elected commissioners of the tax for Charles county, and as such, by the act of 1831, ch. 281, sec. 8, entitled "An act relating to people of color in this State," did levy on the assessable property of Charles county, clear of expenses of collecting the same, the sum of $446.66; and the said State further says, that the sum so levied as aforesaid was duly delivered for collection to Allison Roberts, late of said county, deceased, on the 21st of September 1842, he, the said Roberts, having been duly appointed collector in and for Charles county, by the commissioners aforesaid, before the delivery of the sum aforesaid; and the State further says, that by the act of 1831, ch. 281, aforesaid, it was made the duty of the commissioners aforesaid to take bond from the said Roberts, as collector of the sum so levied and delivered, with sufficient security for the faithful collection and payment thereof into the treasury of the State; and the State further says, that the commissioners aforesaid did not take from the said Roberts, as collector as aforesaid, a bond with sufficient security, as they were required to do by the act aforesaid; and the State further says, that said Roberts did not collect and pay into the State Treasury the sum so levied as aforesaid, and delivered to him for collection, and inasmuch as the said Roberts was not required to give bond with sufficient security by said commissioners, as by the act aforesaid they were required to do, a total loss has accrued to the State of the sum so levied and delivered as aforesaid, with interest thereon; and the said State saith, that by reason of the premises aforesaid, and the failure of the commissioners aforesaid to take bond with sufficient security, as they were by the law required to do, the said commissioners have not performed their duty according to law, but have been guilty of such negligence in office that the said State has sustained great

damage, to wit, the sum of $1500, and thereupon it brings suit, &c.

To this declaration the defendants demurred, which demurrer the court (CRAIN, J.,) sustained, and gave judgment for defendants for costs, and thereupon the State appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Robert S. Reeder*, State's Attorney for Charles county, for the State:

By the act of 1839, ch. 73, the name of the levy court was changed to that of commissioners, and all the powers which the former possessed were transferred to the latter. By the act of 1831, ch. 281, sec. 8, the levy courts or commissioners were authorized annually to levy a certain amount on each county, and on Charles county the sum levied was $446.66, and it was provided that this amount shall be collected in the "same manner and by the same collector or collectors as county charges are collected. The levy courts or commissioners, as the case may be, respectively *taking bond* with sufficient security from *each collector*, for the faithful collection and payment of the money in the treasury of the eastern or western shore, as the case may be, at the time of paying other public moneys to and for the use of the State." According to the case of *State vs. Waters, et al.,* 1 *Gill*, 302, a *specific* bond was necessary, and this money could not be collected on the general bond of the collector. The declaration in this case avers the proper appointment of the commissioners, and of the collector, the failure of the former to take the bond, as required by the act of 1831, ch. 281, sec. 8, and of the latter to collect and pay over the money as it was levied and placed in his hands for collection. The defendants demurred generally, and thereby admitted the facts as averred in the declaration, and the question now arises, are the commissioners responsible for the amount of the money lost to the State through neglect in not taking bond? have they so far disregarded the requirements of

the law, and been so far guilty of official negligence and misfeasance as to make them liable for this tax?

In 1 *Ev. Harris*, 358 to 370, the court will find precedents of declarations against officers for official negligence and misfeasance, and among them are actions against a sheriff for not collecting fees, and for levying more fees than the law allows on writ of execution, for bringing *fi. fa.* on more goods than necessary, and for various other cases of official misconduct, either wilfully or through neglect. In 1 *Saund. Pl. & Ev.*, 337, under the title *"Case,"* it is said: "Case affords a most extensive remedy for all *breaches of duty ex quare contractu;* and from a given state of facts the law raises an obligation to do a particular act, and there is a breach of that obligation, and a consequential damage, an action on the case founded in tort is the proper form." In this case the commissioners were duly elected or appointed by the popular power, and they proffered to become the officers or agents of the people, and there was a contract to perform a duty and receive compensation. In this position there was a legal obligation upon them to perform a positive duty, as specified and required by the law, and it seems to me, if, through negligence or mismanagement, they caused a loss to the State, the employer, they are clearly liable. On the same page of *Saunders* it is said: "Case often lies as a concurrent remedy with *assumpsit*, . . . . it by no means follows, that because a promise may be implied by law, the action on the case, which is in terms founded on the *breach* of that duty *from which* the law implies a promise, may not also be maintainable." Either *case or assumpsit* may be maintained against one when a legal duty rests upon him, and he violates that duty. But, on the same page of the same book, we find language, it seems to me, clearly embracing this case. The author says: "And in *Govett vs. Radnidge, 3 East.*, 70, Lord Ellenborough observes, there is no inconvenience in suffering the plaintiff to allege his gravamen as consisting in a breach of duty arising out of an employment for hire, and to consider that breach of duty as tortious, instead of considering the same circumstances as forming a breach of promise implied from the same consideration of hire." And the author upon

this remarks: "But not only in the case of implied, but in express contracts, if they create a duty, case will lie; for although there be an express contract, a party is not bound to resort to that contract, but he may declare on the tort, and say that the party has neglected to perform his duty." Under the title "*Assumpsit,*" page 110 of the same work, it is said: "*Assumpsit* will lie for non-feasance, misfeasance, or malfeasance, for where a defendant has been guilty of a tortious neglect of his *duty*, the plaintiff may waive the tort and rely on the circumstances as forming a breach of promise implied from some consideration of reward." In *Angel on Lim.*, 43, it will be seen that the United States maintained an action of *assumpsit;* and on page 147, it is said, an action of *assumpsit* may be maintained for malfeasance, misfeasance, and non-feasance, and on page 89, the doctrine is still more distinctly stated, that *assumpsit* lies to recover damages for consequential wrongs or torts, which, though they are *ex delicto*, are *quare ex contractu;* and they arise from malfeasance, or doing what the defendant ought not to do; or non-feasance, or not doing what he ought to do; and misfeasance, or doing improperly what he ought to do properly.

In this case there was, I suppose, an express promise to perform a legal duty, and for the performance of that duty the parties were to receive a reward. They were under an obligation to the State of making the levy, appointing the collector, and taking a bond with approved security, and for these services they were to be paid. They failed to perform their duty, and a loss has ensued to the State, and it seems to me, they are not only liable to the State, by which they were employed in their official character, but that an action may be maintained either in *assumpsit* or in *case.* If this money cannot be recovered out of the defendants, from whom can it be recovered? It has been decided the State cannot recover it out of the collector. 4 *H. & McH.*, 422, *State vs. Stewart.* Is the money then to be lost, when it was manifestly by the negligent conduct of the commissioners that the State cannot receive, or has not received it? There must be a remedy for a violation of a right or duty.

State *vs.* Dunnington, *et al.*

*Alex. B. Hagner* and *Alex. Randall* for the appellees:

1st. The defendants are not individually liable in an action by the State for an alleged neglect of duty. The duty of the commissioners of the tax, in taking bond from the collectors, is not merely *ministerial*, but is one "in relation to which it is their duty to exercise judgment and discretion." In all such cases a public officer is not liable to an action, even though an individual may suffer by the mistake. 3 *How.*, 98, *Kendall vs. Stockton, et al.* 3 *Bouv. Inst.*, 181, and 2 *Do.*, 325, 502. 2 *Term Rep.*, 667, *Russell, et al., vs. Men of Devon.* 20 *Maine*, 246, *Reed vs. Belfast.* 9 *Mass.*, 247, *Mower vs. Leicester.* 17 *Conn.*, 478, *Chidsey vs. Canton.* 8 *Barb.*, 649, *Morey vs. Town of Newfane.* Such an action as this by the *State* against the officers of a county, to render them *individually* liable, is unprecedented. If there is any responsibility, it is by *the county* to the State, and not by these *individuals.* And if the State could sue the county *at all* in such a form of action, the suit should be against *the commissioners* in their official, corporate capacity. *Act of* 1839, *ch.* 73. 6 *Md. Rep.*, 468, *Commissioners of Washington Co. vs. Nesbitt.* 11 *G. & J.*, 50, *Barrickman vs. Commissioners of Harford Co.* 9 *Gill*, 382, *Commissioners of Female Seminary vs. State.* But no action lies against the commissioners, even in their official capacity. 11 *G. & J.*, 50. The board of commissioners is an inferior jurisdiction, and the way to render them responsible as such inferior jurisdiction, is by a *mandamus* to compel them to take the bond with sufficient security, or to proceed by *indictment*, as in the acts of 1843, ch. 307, sec. 6; 1845, ch. 203, secs. 1, 2; and 1845, ch. 254. 3 *Wat. Arch.*, 463. But the State reserved to itself a special remedy for a failure to pay the colonization tax by the counties. By the act of 1834, ch. 197, it directed the Treasurer to deduct from the school fund belonging to each county in default the amount so uncollected. Was not this intended as a relinquishment of any other remedy she might have had, and is it not ample? This court will presume this to have been done, as all public officers are presumed to have discharged their duty, and that

44    v. 12.

the State has actually received from the school fund this tax. Of course *the State* has no cause to complain.

2nd. But even if the commissioners, *individually*, are liable in such a case, and if their duties were purely *ministerial*, still the judgment below was correct, because there was no averment in the declaration that the omission to take bond was *wilful*, or *malicious*, or *illegal*, or *corrupt*. 3 *How.*, 87. 13 *Adol. & Ellis, N. S.* 245, *Linford vs. Fitzroy.* 2 *Nott & Mc-Cord,* 168, *Reid vs. Hood. Ibid.,* 172, *Young vs. Herbert.* 2 *McCord,* 107.

.. 3rd. If the averment in the declaration is intended to assert that the commissioners took a bond, but that the security was insufficient, then no action can lie, for it was a mere matter 'of *discretion;* and if they honestly approved a bond which might have been good at the time, but *proved* insufficient, there can be no pretence that they are responsible, nor if the bond never was *sufficient,* if they honestly believed it sufficient. If the averment means that they *took no bond at all,* then there must be an averment of *corrupt* motive in neglecting to do so. They could not *compel* the collector to give bond. They are to *take* it when offered; but they could not *make* him *give* bond. The collector died, as the *nar* states. Suppose he died *just after his appointment,* are the commissioners to be held responsible for not performing an impossibility, in taking a bond from a dead man? It is impossible to tell from the *nar* how this breach of duty arose; whether the commissioners took *no bond at all,* or whether the bond they took, though sufficient at the time of taking, proved insufficient, or whether they relied upon the *general* bond of the collector, and did not think it necessary to take a *special* bond, as was the case in *State vs. Waters,* 1 *Gill,* 302. This case was not reported at the time of these transactions, and, until this decision, the *general* bond was thought to be sufficient. In either case the approval of the bond was a discretionary act—a *judicial* act by a special jurisdiction—and the failure to perform it is not the subject of such an action.

4th. The *nar* says the commissioners *made the levy.* When? If it was not made at the proper time, it was void. This

should be alleged in the *nar* with certainty as to time and as to its legal effect.

5th. There is shown no legal authority for the institution of this suit, and some should be exhibited. The remedies on the part of the State, a *mandamus* and *indictment*, are to be found laid down, but none such as *this*. No individual, without express authority from the laws of the State, has any right to use the name and sovereignty of the State in suits in its own courts against its own citizens. Such a power as this will lead to mulcting the State in costs, as well as its citizens, without authority, and may be used oppressively to the rights of citizens. Who would accept these petty offices, or any public trusts, at such a hazard as to be personally responsible for all the acts of the entire corporate body? It may well be that these particular *individuals* may not have been, in point of fact, cognizant of the breach of duty alleged.

The authorities cited by the appellant only apply to actions by *individuals* against sheriffs and other *ministerial* officers. But no case can be found of an action *by the government* for damages against its own officers for alleged neglect of *judicial* duty. As well might the State sue the individual members of this court for damages on account of some decision deemed prejudicial to the State, or the Governor of the State, for not approving the bond of an inspector, or taking an insufficient bond.

LE GRAND, C. J., delivered the opinion of this court.

We think the court properly sustained the demurrer to the declaration, and affirm their judgment. It does not clearly appear from the *nar* whether or not any bond was given by the collector. It is doubtful whether the allegation was intended to deny that any bond at all was given, or only that an *insufficient* one was given. Without going into an examination of the authorities bearing on the question presented by the demurrer, we consider it sufficient for the purposes of this case to refer to the decision at this term in the case of *Green vs. Purnell, Comptroller of the Treasury*, (*ante* 329.) The principle there decided covers this case. The duty imposed upon

the commissioners, was one requiring of them "the exercise of judgment and discretion." It was judicial and not ministerial. A mere error in judgment does not give to the State a right of action. The *nar* does not contain any allegation that the commissioners acted corruptly.

*Judgment affirmed.*

(Decided July 22nd, 1858.)