CANTILLON *et al.* v. THE DUBUQUE AND NORTHWEST-
ERN RAILWAY COMPANY.

1. **Railroads:** TAX IN AID OF: FORFEITURE BY ALIENATION OF ROAD:
EXCEPTION TO RULE. The rule has been announced in this court
that the alienation of a railroad before completion, and after a tax
has been voted in aid of its construction, works a forfeiture of
the tax. (See cases cited in opinion.) This holding was based on the
theory that the payment of the tax is upon contract that the tax-
payer shall have an interest in the property he has helped to cre-
ate, and that for the company voluntarily to place the road beyond
its power to give such interest avoids the obligation for payment.
But where the road is sold to and consolidated with that of
another company, whose stock is of equal or greater value than
that of the company to which the tax was voted, and the purchas-
ing company agrees or stands ready to give to the taxpayer the
same amount of stock in the consolidated company as he would
have been entitled to in the other company, the reason of the
rule above referred to does not apply, but such a sale seems to be
within the contemplation of, and authorized by, section 1302 of the
Code, and does not forfeit the right to collect the tax.

2. ———: ———: ON WHAT YEAR'S ASSESSMENT TO BE LEVIED. A
tax was voted in aid of the construction of defendant's road,
December 20, 1883. The levy was made, September 30, 1884, after
the levy of the taxes for that year for state and county purposes,—
.the levy for state and county purposes being made on the assess-
ment of 1884, while the railroad tax was levied on the assessment
of 1883. *Held,* by a majority of the court, that the levy was
properly made on the assessment of 1883, GRANGER and ROTHROCK,

JJ., *dissenting*, and holding that it should have been made on the assessment of 1884, but that the error was no ground for declaring the tax invalid, in the absence of a showing that the complaining taxpayers were thereby prejudiced by having a larger tax to pay.

3. ———: ———: FORFEITURE: DEPARTURE FROM PROPOSED LINE. Defendant's articles of incorporation state that the objects of incorporation are to construct, operate and maintain a railroad from Dubuque in a western and northwestern direction in Iowa, Minnesota and Dakota, to a junction with the Northern Pacific. A tax was voted in a township in Iowa in aid of the road. The conditions named in the petition for, and notice of, the election were those required by statute, and they were complied with by defendant. The line as constructed extends from Dubuque to St. Paul, and it is claimed to be such a departure from the original undertaking as to avoid the tax. But *held* that this position was not sound, as it does not appear that the realization of the purposes of the company, as set forth in its articles of incorporation, was a condition on which the tax was to be paid.

4. ———: ———: AVOIDANCE BY REPEAL OF LAW. A tax was voted, December 20, 1883, to aid in the construction of defendant's road. April 9, 1884, the law under which it was voted was repealed. But, from the time the tax was voted, to the date of the repeal, defendant, with reasonable diligence, prosecuted the construction of its road, and expended money thereon, in reliance upon the tax. *Held* that, under these circumstances, the repeal of the law did not take away defendant's right to the tax. (See *Burges v. Mabin*, 70 Iowa, 643.)

*Appeal from Dubuque District Court.*—HON. C. F. COUCH, Judge.

FILED, JUNE 1, 1889.

ACTION to restrain the collection of taxes voted in aid of defendant's road. There was a judgment for plaintiff, and the defendant appeals.

*Fouke & Lyon* and *Lusk & Bunn*, for appellant.

*Graham & Cady* and *W. J. Cantillon*, for appellees.

GRANGER, J.—This case is before us on rehearing, an opinion having been filed, affirming the judgment of the district court. At the former hearing the case was disposed of under the rulings in *Manning v. Mathews*, 66 Iowa, 675; *Blunt v. Carpenter*, 68 Iowa, 265; and

*Barthel v. Meader*, 72 Iowa, 125,—the rule in such cases being that the alienation of the road before completion, and after taxes voted in aid of its construction, works a forfeiture of the tax. Defendant urges upon the attention of the court the consideration that this case is distinguishable from those cited by its facts as to the alleged sale. In the cases referred to there was, after the voting of the tax, either an absolute sale of the road, or what amounted to a lease in perpetuity, and, for all practical purposes to the taxpayer, an absolute sale. The holdings in such cases are based on the theory that the payment of the tax is upon contract that the taxpayer shall have an interest in the property he helped to create; and that for the company to voluntarily place the road beyond its power to give such interest avoids the obligation for payment. After a careful consideration of the law and the arguments, we are convinced that this case is distinguishable from the others as to its facts, and controlled by a different rule of law. The aid to the defendant company was voted December 20, 1883. On the fifth of May thereafter the defendant company, which, for convenience, we will denominate (as it is in the record) "The Dubuque Company," entered into two agreements, one with the Minnesota Loan and Debenture Company, by the terms of which the latter company was to construct for the Dubuque Company its line of railroad for fifty miles; and one with the Minnesota and Northwestern Railroad Company, by the terms of which, after the Dubuque Company should complete its fifty miles of road, the lines of the two companies should be joined so as to constitute a single line of road, and their corporate interests should be consolidated. This agreement by the Dubuque Company received the assent of its board of directors, but not of the stockholders. There is no doubt in our minds but that from May 5, 1884, it was the purpose of the officers of the Dubuque Company to make the consolidation when the fifty miles of road was completed, which was in fact done. On the thirteenth of December, 1886, and just after the completion of the fifty miles of road by

the Dubuque Company, the Dubuque Company and the Minnesota and Northwestern Railroad Company entered into two contracts: (1) One, by the terms of which the contract of May 5, 1884, was abrogated; and (2) one, by the terms of which the two lines of road were united, and the two companies consolidated in such manner that the consolidated line came under the control and management of the Minnesota and Northwestern Railroad Company. In fact, for the purpose of this case, it may be said to have been an absolute sale of the road to the managing company. In the contract of May 5, 1884, there was no agreement by which the purchasing company was to issue the certificates for stock due on payment of the taxes voted. In the contract of December 13, 1886, there was an agreement that such taxpayers should have the stock in the roads, as consolidated.

I. These facts are sufficiently full for the presentation of our views on this question. As we understand, it is the claim of appellees that the mere fact **1. Railroads: tax in aid of: forfeiture by alienation of road: exception to rule.** of the sale of the road operates to avoid the tax, regardless of the fact of whether or not the taxpayer would be entitled to his certificates of stock from the purchasing company owning the line aided by the tax. The right of railroad companies to transfer their roads and franchises is so well understood, and so clearly provided for by statute, that no citation in that respect is necessary. If appellant's theory, that a company aided by such a tax may, before the completion of its road, transfer it to another company, and still preserve its right to the tax, has support in the statute, it is by virtue of section 1302 of the Code, which reads as follows: "Where any railway company shall be organized under a corporate name, and shall have made contracts for payments to it upon delivery of stock in such company, and shall, subsequent to such contracts, have changed its corporate name, or when the real ownership in the property, rights, powers and franchises have passed, legally or equitably, into any other company, no such contracts shall be enforced in law or equity until tender or delivery of stock in such

last-named corporation or company." This section has not heretofore received judicial construction, and we must express a regret that the legislative purpose is not more apparent than it seems to be. It, however, is clearly apparent that cases are contemplated, where payments are to be made to the company upon delivery of stock in the company, and it is equally clear that it contemplates that the ownership of the property, rights, powers and franchises may legally pass to another company, while such contracts for payments exist; but such contracts are not enforceable without tender or delivery of stock in the company having the ownership of the property, etc. To our minds two queries are presented: (1) Does the section embrace obligations for payment of taxes voted as in this case? and (2) does it embrace voluntary conveyances by one company to another? As to the first, the letter of the law makes it applicable to contracts for payments upon delivery of stock. Counsel in this case agree, and we have held, that the obligation of the taxpayer in such cases arises on contract, and the obligation for payment is dependent upon the delivery of stock. Acts, 20th Gen. Assem., ch. 159. The language of the law as to contracts is general, and we see no reason for excluding from its operation this class of contracts. As to the second query, the language of the law is also very general. It speaks of cases where the ownership legally passes to another company. It is sufficiently broad to include voluntary and involuntary conveyances. At the first reading there was something of a hesitancy in giving to the section so broad a meaning; but the rules for construction, and our reflections, lead us to the conviction that nothing less was designed. In argument no reasons are suggested against such a construction, and none whatever occur to us. With this view of the law, it is plain that the case is distinguishable by its facts from those on which the former opinion is based. The parties must be held to a knowledge of the law at the time the tax was voted, and that the company had the right to transfer the road, and

that thereafter the obligation for payment would depend upon the readiness of the purchasing company to deliver the stock. We do not leave out of view in this case the fact that by the agreement of May 5, 1884. there was no provision in the contract of sale for the purchasing company delivering the stock. There are many doubts surrounding the validity of that sale, but with our view we think it unnecessary to determine them. We may say it was a valid sale. Looking to the same section, we do not find a requirement that in making the sale the delivery of this stock shall be provided for; and it is of no concern to the taxpayer whether such a provision is made as between the companies or not. The law exempts the taxpayer from payment unless the stock is forthcoming. By the contract of sale, December 13, 1886, provision is made for the stock in the consolidated, line and the evidence clearly shows that it is of greater market value than it would be in the former road. Considered in the light of a pecuniary advantage, the transfer was greatly to the interest of the taxpayers, and hence they are without any special claims to equitable consideration.

II. The tax was voted December 20, 1883. The levy was made September 30, 1884, after the levy of the taxes for that year for state and county purposes; the levy for state and county purposes being made on the assessment of 1884. That for the railroad tax was levied on the assessment for 1883, and appellees insist that the tax is void for that reason. It is appellees' contention that the board of supervisors having used the assessment for 1883 for the levy of taxes in September of that year, and the tax list having passed to the treasurer for collection, the assessment had served its full purpose, and that it could not be made the basis of a levy in 1884. After a township has voted aid to a railroad company, the law makes it the duty of the township clerk or the clerk of the election to certify the facts to the county auditor, who shall at once cause such certificate to be recorded in the office of the county recorder. And then follows

2. ──:──: on what year's assessment to be levied.

this provision: "When such certificates shall have been made and recorded, the board of supervisors of the county shall, at the time of levying the ordinary taxes next following, levy such taxes as are voted under the provisions of this act as shown by said certificate, and cause the same to be placed on the tax lists of the proper township, incorporated city, or town, indicating in their order thereupon when and in what proportion the same are to be collected, and upon what conditions the same are to be paid to the railroad companies; a certified copy of which said order shall accompany the tax lists. Said taxes shall be collected at the time or times specified in said order, in the same manner, and subject to the same laws, after they are collectible, as other taxes, or as may be stated in the petition and notices for the election." Acts, 20th Gen. Assem., ch. 159, sec. 3.

The foregoing is our only statutory guide as to the assessment on which to make the levy. We do not accept the theory of appellees that, the levy of taxes for 1883, for general purposes, having been made on the assessment for that year, the same assessment could not be used for another levy; that is, we see no reason why, after one levy is made, the same assessment may not be used for another levy, if the law so designed. The assessment for the year which the law really contemplates is but the instrument or means for measuring or ascertaining the amounts of the individual's indebtedness to the company, as he is to pay five per cent. of the assessed valuation of his property. The extent of such an obligation may be measured by the assessment of any year the law may designate or the parties agree upon, and the fact that the assessment has once been used would make no difference. We say this much only in answer to a claim that an assessment can only be used as the basis of a levy for a single year. Appellant's theory is that, the tax being voted in December, 1883, the law contemplates a levy on the assessment for that year; that both the company and the taxpayer then know what the assessment is, and contract with knowledge of the amount to be paid by the one and

received by the other; while, if the levy is to be on a future assessment, they make their contract in ignorance of so important a consideration. If this thought is to be a controlling one, we experience a difficulty in fixing a time to serve as a dividing line between levies on past or future assessments. In the case of *Parsons v. Childs*, 36 Iowa, 108, the court had under consideration the question of which of two assessments was the proper one for the levy where taxes had been voted to aid the construction of a railroad. In that case the aid was voted March 30, 1869, and the court held that the levy should be the assessment of that year, and used this language: "In view of the provisions of our statute, as above mentioned, and numerous others, it is very manifest that the tax voted and sought to be enjoined in this case was regularly and legally to be levied upon the assessment of 1869, the year in which it was voted." There is much doubt of a purpose in that case to hold that in all cases of voting such aid the levy must be made on the assessment of the calendar year in which it was voted. In fact, there were some words used indicating that the holding is only applicable to that case. We are not without apprehension of danger in fixing upon any definite time as applicable to all such cases. However, a majority of this court are of the opinion that, in view of the time the tax was voted, with other facts in this case, the levy of the tax on the assessment of 1883 is not erroneous, and that the claim of appellees in that respect cannot avail to defeat the tax. Justice ROTHROCK and the writer of this opinion hold to the view that the assessment for 1884 is the one on which the levy should have been made, but think the plaintiffs are not entitled to relief on that account. There was an assessment for 1884, and we think before equity will restrain the collection of the tax because of the levy on the wrong assessment, the plaintiffs must show prejudice resulting from the error; as that, in consequence of the levy being on the wrong assessment, a greater tax is imposed. If the amount of the tax is less or equal, there can certainly be no just grounds of comp'aint. It

is not like a case where there has been no assessment for the year 1884 to enable the plaintiffs to know as to their prejudice, and allege the fact, if true.

III.   The articles of incorporation of the Dubuque Company state that the objects of incorporation are to

**3. ——: ——: forfeiture: departure from proposed line.** construct, operate and maintain a railroad from Dubuque in a western and northwestern dirction in Iowa, Minnesota and Dakota, to a junction with the Northern Pacific.   It is urged that the line, as now formed, and extending from Dubuque to St. Paul, is such a departure from the original undertaking as to avoid the tax.   The petition signed by the citizens of the township in which the vote was ordered, and the notice for the election, conform to the statutory requirements in stating the amount of work to be done on the road, and when and where it must be done, and to what point the road must be completed, before the tax was collectible, and these provisions have been fully complied with.   The record of the case satisfies us that at the time the tax was voted the general course was designed to be north and northwest, but the extent of the line, and its northern terminus, were matters which circumstances in the future must determine.   It was well known that if the enterprise proved a success it must have financial aid from other quarters than Dubuque, and it must have been understood that changes might be necessitated in securing the needful assistance.   The record does not disclose that the tax was voted upon condition that the road was to be constructed into any other state or territory. It was known that the incorporators at the organization of the company had as objective points Minnesota and Dakota, and the Northern Pacific.   The reaching of such points was not a condition of payment, and we are unable to say that the road may not yet be so constructed.   We do not think in this respect there is such a deviation from the conditions under which the tax was voted as to excuse the payment.

This tax, as before stated, was voted on the twentieth of December, 1883, and the law under which it

**4. —: —:** was voted was repealed April 9, 1884, and
**avoidance by** appellees say that fact avoids the tax. The
**repeal of law.** case of *Burges v. Mabin*, 70 Iowa, 643, is
decisive of the law of this branch of the case. There
is some question as to the amount of money and time
expended after the vote, and before the repeal of the
law, but we think it was unmistakably sufficient to
support the contract, and avoid the operation of the
repealing statute. It is sufficient to say that after the
tax was voted the company engaged as actively in the
preparation for the work of construction as it could well
do at that season of the year, and with the opening
spring prosecuted its work with energy, and complied
with the contract on its part. We think, also, that the
expenditures made and the work done were in faith of
the tax voted. With these views, we reach the conclu-
sion, on rehearing of the case, that the petition is with-
out merit, and that it should be dismissed.

REVERSED.