### 1451.  TAYLOR v. THE STATE.

1. To authorize the grant of a new trial, where evidence is adduced which fully warrants the verdict rendered, not only error, but injury, must be shown.

2. In proving the allegations of an indictment, the State is not restricted to the date alleged, nor confined to direct proof of the offense. It may attempt to prove, either by direct evidence or by circumstances, the commission of the offense alleged, and may, by either method, prove the commission of the same offense more than once; and a conviction will be authorized if any one of the criminal transactions be proved to the satisfaction of the jury, although the attempt to prove others may result in failure.  Where it is sought to prove that a defendant has more than once, within the statute of limitations, committed the offense charged in the accusation, the jury should be charged, upon written request to that effect, except in those cases where the transactions are so connected in time and so similar in their other relations that the same relevancy may be imputed to all, that each of the transactions sought to be proved as constituting an offense is to be considered by the jury apart from any similar, disconnected transaction, and that evidence of one is not to be used as corroboration of the other,—that the guilt of the defendant is to be determined by whether any specific transaction, identified by the evidence as within the statute of limitations, has, without the aid of any different transaction, satisfied them of the defendant's guilt.  In the absence of such a request, it is not the duty of the court to point out to the jury that the State may have failed to sustain one or more instances of alleged liquor selling, if the evidence as to any one transaction proved by the State would clearly authorize the conviction of the defendant.

3. Evidence of the acquittal of a defendant upon the charge of keeping intoxicating liquors for sale is irrelevant upon his trial for the offense of selling intoxicating liquors. One may sell liquor which he does not keep for sale.

4. A witness whose impeachment has been attempted by proof of general bad character may be sustained by witnesses who admit that his general character is bad, but testify that it is not so bad but that they will believe him upon his oath. The rule which admits testimony as to the character of a witness, and testimony which is dependent upon character, recognizes that there are gradations in character which are established by purely opinionative evidence. These gradations, as well as the comparative value of the opinionative evidence, are exclusively for the jury.

5. That one accused of unlawfully selling intoxicating liquors is in possession of quantities of liquors, beer, bottles, jugs, and measures, is a circumstance which, in connection with other circumstances, will authorize the inference that the owner is engaged in the unlawful sale of intoxicants. Such evidence is admissible though obtained by unlawful seizure.

6. A jury may believe a witness upon the subject-matter of his testimony although he may have been impeached by proof of general bad character or by contradictory statements previously made.

7. This court will not review the sentence imposed in a criminal case, unless it appears that it exceeds the statutory limit.

Accusation of unlawful sale of liquor, from city court of Griffin —Judge Patterson. October 10, 1908.

Argued November 10,—Decided November 24, 1908.

*Robert T. Daniel, Cleveland & Goodrich,* for plaintiff in error.

*William H. Beck,* solicitor, *William E. H. Searcy Jr.,* contra.

RUSSELL, J. The plaintiff in error was convicted of selling intoxicating liquors. He moved for a new trial, upon the ground that the verdict was contrary to evidence and contrary to law; and afterwards amended his motion, by assigning error upon various rulings as to the admissibility of evidence and upon certain instructions of the court to the jury, and the refusal of the court to charge in accordance with certain written requests. The motion for new trial was overruled, and this judgment is the error assigned in the bill of exceptions.

1, 2. The 10th, 11th, and 13th grounds of the amended motion are abandoned in the brief of the plaintiff in error, and, therefore, will not be considered. As to the general grounds of the motion, it is only necessary to say that the State produced three witnesses, who testified that the defendant, during August, 1908, sold a bottle of whisky, and was paid and accepted $1.50 in cash for the whisky,

and that this transaction took place in his store in Griffin, Spalding county, Georgia. In the absence of anything else in the case, this evidence, if believed, authorized the conviction of the defendant; and we will, therefore, examine the grounds of the amendment to the motion, to see if the result was influenced by any error of the trial court. In the 4th ground of the amended motion it is insisted that the court erred in admitting in evidence the barrel of beer and jugs of whisky and empty bottles seized by the officers in the raid on the storehouse and dwelling house of the defendant on May 8, 1908, when the accusation charged the sale of whisky in August following, and the sale directly testified to, if made, was made in August, 1908. The objection urged to this evidence is, that it could not possibly have been any part of the whisky that was sold, and that it could not throw light upon the transaction which occurred many months thereafter; and further, this evidence is insisted to be illegal because witnesses testified that Taylor's possession was legal. This ground of the motion for new trial need not have been considered by the trial judge, nor need we consider it, because it does not appear that the objection urged in the motion for new trial was stated upon the trial, nor in fact that any specific objection was made at that time. However, we do not think that the court erred in admitting the testimony complained of. It was competent for the State to prove a sale, either by direct or circumstantial evidence, and to prove as many distinct sales as it could, as having been made by the defendant at any time within two years prior to the filing of the accusation. The State was not confined to the sale testified to by Bethune and others as having taken place in August, but could have shown as well sales in March, April, or May, and a conviction could have been had upon any of these sales which the jury might have found to be established by testimony. The circumstance of possessing a complete outfit necessary for carrying on a "blind tiger" might not by itself have authorized the conviction of the defendant of illegal sales in May, but the fact that the State failed, if it did, to complete the proof as to the transaction in May could not render illegal a conviction of a sale at another time. It is true, as insisted by counsel for the plaintiff in error, that the evidence adduced by the State in the unsuccessful attempt to show a sale in May (if the circumstances adduced were indeed insufficient to show a sale to have been made

in May) might be prejudicial to the defendant, because it might be used by the jury as corroborative, to some extent, of the statement made as to other sales; but this probably harmful influence could have been removed by a timely request for an instruction that the jury would not be authorized to convict of any sale which had not been proved satisfactorily to them, and that the evidence as to each sale, whether direct or circumstantial, was to be considered apart from evidence of any other distinct sale to which the testimony, direct or circumstantial, might point, if they believed that there was such testimony.

3. The complaint in the 5th ground of the amended motion is that the court refused to admit in evidence an accusation in the city court of Griffin, charging the defendant with keeping for illegal sale a quantity of liquor, upon which a verdict of not guilty had been rendered. We think this evidence was properly excluded. The fact that a jury found a defendant not guilty is not better proof of his innocence of the charge than the fact that a jury found a defendant guilty is proof of his guilt. The verdict is conclusive of the defendant's guilt or innocence in so far as it affords a bar to his prosecution for the same offense, but the finding of the jury on the substantive fact of guilt or innocence, there made, is of no probative value as related to collateral matters. While the "same-transaction test" is of force in this State, still selling intoxicating liquors and keeping such liquors for sale do not in every instance necessarily involve the same transaction. But can it be said that one can not sell liquor which he has not kept for sale? May he not be guilty of selling intoxicating liquor which another has kept, which is another's property, or which he may even have stolen from another and immediately disposed of? There is not necessarily an identity between keeping for sale and the selling. It seems to us that under the rule referred to in 23 Cyc. 252, the acquittal of a defendant on a former prosecution is not admissible where the two offenses are so dissimilar that his acquittal on the one charge could prove nothing as to his innocence of the other. The purpose of the testimony offered was to bar the prosecution and to avoid a conviction upon the transaction in May. To be effective for this purpose, a plea in bar should have been filed.

4. It is insisted that the court erred in permitting certain witnesses to testify that they would believe Bethune (a witness sought

to be impeached by proof of general bad character), after they had each testified that Bethune's character was bad. . It is argued that under the terms of the Civil Code, §5293, a witness sought to be thus impeached can not be sustained, unless the sustaining witness, after having testified that he is acquainted with the character of the witness in question, further testifies that the witness's character is good, and that from that good character he is induced to believe him. Section 5293 is as follows: "A witness can be impeached as to his general bad character. The impeaching witness shall be first asked as to his knowledge of the general character of the witness, and next as to what that character is, and lastly he may be asked if, from that character, he would believe him on his oath. The witness may be sustained by similar proof of character," etc. It is insisted, that unless the sustaining witness testifies that the general character of the witness whom he is introduced to sustain is good, he should not be permitted to testify that he would believe him; and that when a witness, after having testified that the witness whom he is called to sustain is of bad character, still testifies that he would believe him, this testimony is merely the individual opinion of the witness. It must be remembered that there are many gradations in character, and it must also be borne in mind that both the impeaching and the sustaining evidence, where a witness is sought to be impeached by proof of general bad character, is wholly opinionative. Each class of witnesses has a knowledge of the character of the witness under review, derived from the general impression or opinion of those who are acquainted with the witness. After looking at this mental photograph of the character of the witness, the witness's answer to the second question (as to whether the character of the witness is good or bad) is likewise dependent entirely upon his own opinion of what constitutes good character or bad character. A witness who entertains a high standard of morals might consider, from what he has heard, that the witness in question has a bad character, while another, not so scrupulous, and having heard the same things, but considering, perhaps, what the first witness deemed to be grave defects as at best but petty peccadilloes, might testify that the same character was, in his opinion, good. Such instances as these frequently arise, and it is for the jury to give their own valuation to all opinionative evidence. It is clear that this is not the exact point now before us.

16

But if it be conceded that witnesses may grade character, upon the same state of facts, from bad to good, or from good to bad, why can not a witness testify to degrees in either goodness or badness? The effect of the testimony in such a case as this, where witnesses testified that the character of a designated witness was bad, and yet that they would believe him upon his oath, might be analyzed by the jury as follows: "I know this witness's character, and know, from what I have generally heard of him, that his character is bad, and yet, from what I have heard of him, it is not so bad as to render him unworthy of belief when testifying upon his oath." Of course, such testimony as this might not be as satisfactory to counsel attempting to sustain a witness as the testimony of a witness that in his opinion the character of the witness sought to be impeached was good, and for that reason he would believe him on oath; and yet the credit to be attached to the testimony might depend upon the manner of the witness, his caution, and his credibility as it might appear to the jury. The opinion of some witnesses that another, although generally reputed to be of bad character, was entitled to credit upon his oath would be worth more than the testimony of other witnesses who might swear glibly that the witness under review had a good character, and that, due to that circumstance, they would believe him. Section 5293 forbids the "opinions of single individuals," as to the first two questions asked of witnesses brought to attack or sustain another, but the third question is always addressed to the witness as an individual. The first two questions are asked in order to put before the jury the facts upon which he predicates the opinion which he gives in reply to the third question, and thus enable the jury to see whether the conclusion reached by the witness is correct. The question at last for the jury to determine is whether the opinion of the witness is a logical sequence to the facts in his possession. We do not see why a witness may not as well say that he measures character by different standards from others, by saying that he will believe a witness although in some respects he has a bad character, as by saying that though others (summing up what they have heard of a certain individual) esteem his character to be bad, still, from his standpoint, the facts related do not imply bad character.

5. The 7th, 8th, and 9th grounds of the amended motion properly present objections urged to testimony of the same character

as that mentioned in the second division of this opinion, and have been sufficiently dealt with. It need only be said in addition that, under the indictment, the State might show by circumstances, if it could, that a sale of whisky was made by the defendant in May; and it was immaterial, under the allegations of the accusation, whether such sale was shown at the residence or at the store of the defendant, provided both were in Spalding county. As we have stated above, any prejudicial effect of this evidence could have been removed by a specific instruction, in the charge of the court, that the jury should not consider this evidence as illustrating any other sale, but should consider it only for the purpose of determining whether it of itself demonstrated a sale within the statute of limitations, and, if it was not sufficient for this purpose, should disregard it entirely. And this instruction should have been requested.

The objection to the testimony of the witness Brown, that it was irrelevant and prejudicial to the defendant, because the evidence testified to, as contended in the brief, was obtained by illegal search and seizure, is not set forth in the record with sufficient fulness to be considered. But even if the point had been directly raised, it would seem to be settled by our decision in *Smith* v. *State, 3 Ga. App.* 326 (59 S. E. 934). See also *Jenkins* v. *State, 4 Ga. App.* 859 (62 S. E. 575).

6. The court charged the jury that "if a witness is impeached, he is not to be believed, unless corroborated by other witnesses or circumstances in proof, unless you believe that the witness has spoken the truth." It is insisted that if a witness has been impeached, he is not to be believed, unless corroborated by witnesses or circumstances in proof, and that the court erred in stating to the jury that if they believed the witness had spoken the truth, they still had the right to believe a witness who had been impeached and had not been sustained or corroborated. There is some conflict of authority upon the subject here presented, and the court used the word "impeach" in too broad a sense. His instruction would have been technically more correct had he said, "a witness sought to be impeached is not to be believed, unless you believe he has spoken the truth;" and yet the whole question of impeachment is for the determination of the jury only, and the jury has the right to believe a witness as to the particular facts with reference to which he testifies, although they may be satisfied of the truth of the im-

peaching testimony.  Any other rule would deprive the jury of its. right of being at last the arbiter as to what is the truth of the case.  The most recent rulings of the Supreme Court upon this. subject approve of this charge.  Practically the same charge was. delivered by the court in *Ector* v. *State,* 120 *Ga.* 545 (48 S. E. 315) ; and the case of *Davis* v. *State,* 94 *Ga.* 399 (19 S. E. 243),. is cited in support of the ruling announced in the *Ector* case.  In the *Davis* case proof of the witness's bad character and of contradictory statements was uncontradicted, but the Supreme Court. held that the jury had the right to find that the impeachment was. unsatisfactory for the purpose of discrediting the witness, because they had the right to believe his testimony.  See also *Sindy* v. *State,* 120 *Ga.* 202 (47 S. E. 554).

7.  As has already been held by this court, we can not review the sentence of a trial judge, unless it exceeds the statutory limit.

The verdict being supported by the evidence, and it not appearing that any of the errors assigned could have misled the jury or influenced their finding, we find no error, in the judgment refusing a new trial, which would authorize a reversal.

*Judgment affirmed.*