INHABITANTS OF EDEN vs. INHABITANTS OF SOUTHWEST HARBOR.

Hancock.    Opinion December 4, 1911.

*Paupers. Statutes. Repeal by Implication. Persons Quarantined. Liability of Towns. Statute, 1821, chapter 127, section 1; 1883, chapter 123, section 27; 1909, chapter 25, section 2; chapter 55. Revised Statutes, chapter 18, section 51.*

The phrase "town to which he belongs" within Revised Statutes, chapter 18, section 51, providing for the furnishing of nurses, etc., to a quarantined person at the charge of the town to which he belongs, means the town in which he has his pauper settlement.

To effect a repeal by implication, a later statute must be so clear and explicit as to show that it was intended to cover the whole subject-matter, and displace the prior statute, or the two must be plainly repugnant and inconsistent.

Revised Statutes, chapter 18, section 51, providing that nurses and their assistants and necessaries furnished a quarantined person shall be at his charge, or that of his parents or master if able, and otherwise, at that of the town to which he belongs, was not repealed by implication by Public Laws 1909, chapter 25, section 2, providing that expenses, including supplies of food, medicines, etc., furnished a quarantined person, or such part thereof as the board of health may determine, shall be deemed a legitimate expenditure for the protection of the public health, and shall be charged to the account of incidental expense of the town, but not to any pauper account, and that no person so quarantined and assisted shall be considered a pauper. The former statute is designed to divide the expenses, so that the part designed to protect the community where the infected person is found should be borne by that town, and the part incurred for his healing and comfort should be borne by the patient or by the town of his settlement, while under the latter statute both kinds of expenditures for indigent persons are grouped together, and it is left to the board of health to determine how much shall be borne by the town of the settlement, and how much by the town where the quarantined person is found.

Under the express terms of Public Laws 1909, chapter 55, a town furnishing antitoxin to an indigent person is entitled to reimbursement by the town of his settlement.

Under Public Laws 1909, chapter 25, section 2, providing that expenses of a quarantined person or such part thereof as the board of health may determine shall be charged to the account of incidental expenses of the

town, etc., the determination by the board of health of a town where nurses, necessaries, etc., were furnished persons having their pauper settlement in another town, that the expenses should be paid by the town of settlement, renders the latter town liable.

On an agreed statement of facts.    Judgment for plaintiffs.

Action by the town of Eden against the town of Southwest Harbor to recover for supplies and services furnished certain persons infected with diphtheria, said persons having their settlement in the defendant town, though found in the plaintiff town when said supplies and services were furnished, brought under Revised Statutes, chapter 18, section 51.    Writ dated March 8, 1911.

The declaration in the writ is as follows:

"In a plea of the case, for that the said defendant at said Eden, to wit Ellsworth, on the day of the purchase of this writ, being indebted to the plaintiff in the sum of one hundred ninety-five dollars and four cents, according to the account annexed, then and there in consideration thereof, promised the plaintiffs to pay them the same sum on demand:

"Bar Harbor, Me., Dec. 12, 1910.

Town of Southwest Harbor,

                      To Town of Eden,                         Dr.

To supplies and services furnished George Marshall and
    family as follows:

| | |
|---|---:|
| To medical services rendered by Dr. J. H. Patten, | $65.00 |
| "      "      "      "      Dr. R. G. Higgins, | 2.00 |
| " services as undertaker and necessaries for funeral of child Eugene Marshall, rendered and furnished by F. E. Sherman, | 61.43 |
| " Groceries, | 10.21 |
| services hauling water, ice, and supplies rendered by Ralph Brewer, | 13.20 |
| fumigating, | 10.00 |
| To antitoxine, | $ 2.20 |
| " team hire, | 10.00 |
| " services as nurse rendered by Mrs. Susie J. Sullivan, | 21.00 |
| | $195.04 |

"Also in a plea of the case, for that on the thirteenth day of August, 1910, one George Marshall and his family, consisting of the following named persons, to wit: George Marshall, Villa A. Marshall and Eugene Marshall, had their legal settlement in the defendant town, which said legal settlement in said defendant town has continued ever since; and on said 30th day of August at said Eden, said George Marshall and his family had recently been and then were inflicted with diphtheria, a disease and sickness dangerous to the public health; and thereupon the local board of health of the town of Eden in which town said Marshall and his said family were then living, provided for the safety of the inhabitants as they, the said board of health, thought best, by removing them to a separate house, viz, to the isolated hospital, so called, in the said town of Eden, said removal not being dangerous to their health; and by providing medicines, medical attendance and necessaries to the amount of one hundred ninety-five dollars and four cents ($195.04) as specified in the account annexed hereto; and neither the said ·George Marshall nor his said family nor the parent or master of either, was or is able to repay said charge; of all of which said defendant town then and there had notice, and said defendant town by virtue of the statute then and there became liable and promised the plaintiff to pay it said sum of one hundred ninety-five dollars and four cents on demand."

When the action came on for trial, an agreed statement of facts was filed and the case reported to the Law Court for determination.

The agreed statement of facts is as follows:

"On Aug. 30, 1910, and ever since that date Geo. Marshall and his family, said family consisting of said Geo. Marshall, his wife ·Villa A. Marshall and his child Eugene Marshall, have had their legal settlement in the defendant town.

"On said date said Geo. Marshall and his family aforesaid were residing in the plaintiff town and were and had recently been infected with diphtheria, a disease and sickness dangerous to the public health. On said Aug. 30, 1910, and other days between said date and Sept. 13, 1910, the local board of health of the plaintiff town, being the town where said Marshall and his family

aforesaid then were, for the purpose of providing for the safety of the inhabitants, the said local board of health thinking it best to do so, removed said Marshall and his family aforesaid to a separate house to wit: To the isolated hospital, so called, in said plaintiff town, and on said Aug. 30 and other days up to and including Sept. 13, 1910, the plaintiff provided for said Marshall and his family aforesaid at said hospital, nurses and other assistants and necessaries as set forth in the account annexed to the writ; the removal to the isolated hospital, above referred to was done without great danger to the health of the persons removed. Neither said Geo. Marshall nor his family aforesaid, nor the parent or master of either was or is able to pay said charges.

"On the 12th day of December, 1910, the secretary of the local board of health of the plaintiff town by order of said board wrote and mailed to chairman of the board of selectmen of the defendant town a letter enclosing the bill in suit except the last item thereof, said letter being in the form following:

'Bar Harbor, Me., Dec. 12, 1910.
Chairman of Board of Selectmen,
          Southwest Harbor, Me.

Dear Sir: We are sending you bill for the George Marshall family. His boy having been sick and died with diphtheria. This is the actual money paid out and no cost of the board of health services added to it.

Hoping that you will send us your check not later than the 20th, as our books close January 1st, and we want these accounts all in if possible.

Yours very truly,<br>(sgd) J. ALDEN MORSE,<br>Sec'y Board of Health.'

"This letter was received by chairman of the selectmen of the defendant town Dec. 14, 1910, the items set forth in the account annexed, so far as the plaintiff town is entitled to recover, are suitable in character and charges therefor are reasonable and proper,

and if the plaintiff is entitled to recover it may recover the amounts specified in the writ: The writ and declaration shall be printed and form a part of the agreed statement.

"It is also agreed that the said defendant town duly filed its offer to be defaulted for the sum of two dollars and twenty cents for the antitoxin charged in the account annexed and that said offer was rejected."

*Charles H. Wood, and Deasy & Lyman,* for plaintiffs.
*George R. Fuller, and Hale & Hamlin,* for defendants.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, KING, BIRD, HALEY, JJ.

CORNISH, J. August 30, 1910, the local board of health of Eden, the plaintiff town, quarantined one Marshall and his family as persons infected with a contagious disease, and provided for them "nurses and other assistants and necessaries." (R. S., ch. 18, sec. 51.) Mr. Marshall and his family, though then commorant in Eden, had their pauper settlement in the defendant town, South West Harbor, and were unable to pay for the services and supplies thus furnished them. Accordingly the town of Eden brought this action against the town of South West Harbor to recover for the expenses of such services and supplies under the statute, R. S. (1903) ch. 18, sec. 51, which provides that the "nurses and other assistants and necessaries" furnished a quarantined person shall be "at his charge, or that of his parent or master, if able; otherwise at that of the town to which he belongs." It is conceded that the phrase "the town ·to which he belongs" is meant the town in which he had his pauper settlement. *Kennebunk* v. *Alfred,* 19 Maine, 221; *Hampden* v. *Newburgh,* 67 Maine, 370. It is further conceded that the plaintiff can recover for the items and amounts sued for if the right of action given by that statute was not taken away by the later statute, Public Laws of 1909, ch. 25.

The later statute does not in terms take away the right of action given by the earlier and the repeal if accomplished, must be by implication. But to effect a repeal by implication the later statute

must be so broad in its scope and so clear and explicit in its terms as to show that it was intended to cover the whole subject matter and to displace the prior statute or the two must be so plainly repugnant and inconsistent that they cannot stand together. *Goddard* v. *Boston*, 20 Pick. 407; *Smith* v. *Sullivan*, 71 Maine, 150; *Staples* v. *Peabody*, 83 Maine, 207.

The court will if possible give effect to both statutes and will not presume that the legislature intended a repeal. *Diver* v. *Keokuk Savings Bank*, 126 Iowa, 691, 102 N. W. 542.

"As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter unless the repugnancy between the two is irreconcilable." Sutherland on Damages, page 152.

A critical comparison of these two statutes under consideration dissipates any apparent repugnancy. The act of 1909 simply amends the last ten words of R. S., ch. 18, sec. 51. All the rest of the section remains unchanged. To make this clearer: The earlier statute R. S., ch. 18, sec. 51, is as follows:

"When any person is or has recently been infected with any disease or sickness dangerous to the public health, the local board of health of the town where he is, shall provide for the safety of the inhabitants, as they think best, by removing him to a separate house, if it can be done without great danger to his health, and by providing nurses and other assistances and necessaries, at his charge or that of his parent or master if able; otherwise, at that of the town to which he belongs."

The later statute, Pub. Laws 1909, ch. 25, sec. 2, is as follows:

"All expenses including all supplies of food and medicine, including antitoxin, incurred in carrying out the provisions of section one of this act, or incurred in furnishing families or persons affected with tuberculosis with burnable spitcups, or other supplies needed to prevent the spread of infection, *or such part thereof as the board may determine,* shall be deemed a legitimate expenditure for the protection of the public health and shall be charged to the account

of incidental expenses of the town, but not to any pauper account, nor shall any person so quarantined and assisted, be considered a pauper, or be subject to disfranchisement for that cause unless such persons are already paupers as defined by the Revised Statutes."

This later statute was, in effect, further amended at the same session of 1909, by the passage of chapter 55, which provides, among other things, that "the local board of health in any town furnishing an indigent residing in another town antitoxin, upon application shall be reimbursed by the town where the patient resides." The word "resides" in this statute is evidently used in the same sense as "belongs" in R. S., ch. 18, sec. 51, that is, the town where the indigent has his pauper settlement.

The right of action named in section 51 of chapter 18 of the Revised Statutes was provided for at the organization of the State, by section 1 of chapter 127 of the Public Laws of 1821, and it has come down through all the revisions of 1841, 1857, 1871, 1883, 1903, in essentially the same form, except that prior to 1887 the municipal officers were charged with the duty which since that time has devolved upon the local board of health; 1883, ch. 123, sec. 27. It has never been one of the pauper statutes, enacted for the relief of the poor. That matter lay wholly in the control of the overseers of the poor who were and are obliged to follow certain statutory requirements as to notices, etc., in order to recover from the town of the pauper's settlement. But in case of an infectious disease or one dangerous to the public health, at first the municipal officers and later the local board of health were given these powers and duties in order not merely to relieve the patient, but "to provide for the safety of the inhabitants." The assistance rendered and the expenses incurred are in no sense pauper supplies. They need not be applied for by the pauper himself nor by some one authorized by him, and no notice need be given to the town where the patient has his pauper settlement. The municipal officers and later the local board of health had full power to act when the emergency arose and it was outside the jurisdiction of the overseers of the poor.

But this court in *Kennebunk* v. *Alfred*, 19 Maine, 221, in construing the original statute, held that there should be a division of expenses, that part of the authorized expense was designed wholly for the protection of the community and should be borne by the community, while another part was for the healing and comfort of the patient and should be borne by the patient if financially able, otherwise by the town of his settlement.

Now the effect of chap. 25 of the Laws of 1909, is simply to change the last clause of section 51, touching those persons who might not be able to pay, the indigent persons, and to make the town where such persons fall sick, liable for all the expenses, including those designed to prevent the spread of the disease and those for the comfort of the patient, "or such part thereof as the board may determine." Without that clause the town furnishing the supplies would be liable for all the expense, but with it, the effect is to give the local board the power to charge a part or the whole to the town of settlement.

In other words, under the old statute as construed in the decision before referred to, expenditures for food for indigent persons were chargeable to the town of settlement, but expenditures for protection of the public health must be borne by the town supplying them. Under the new statute, all kinds of expenditures for indigent persons are grouped together, and it is left to the board of health to decide how much shall be borne by the town of settlement and how much by the town where found. This new act does not restrict the power of the board under R. S., c. 18, sec. 51, to remove the sick and place them in quarantine. They still have that power. Nor does it abridge their power to collect all the expenses from the person himself if able. They still have that power and as to those persons there never has been any division of expenditures. They were liable for the whole or nothing. But if the person is indigent then the new act prescribes a change, and instead of dividing the expenses along the line that separates personal relief from public protection, and collecting the former from the town of settlement and compelling the latter to fall upon the town rendering the services, it groups all kinds of expenses in one class and leaves to the board of

health the determination how much if anything shall be borne by one town and how much if anything by the other.    In short it substitutes the judgment of the board of health for the arbitrary rule of law laid down in *Kennebunk* v. *Alfred,* supra.

This is subject to one exception, however, which was made later by chap. 55 of Public Laws of 1909, which provides that for antitoxin furnished an indigent person the town furnishing shall be reimbursed.    Antitoxin then shall be charged to the town of settlement, but all other expenses shall be charged according to the determination of the board of health.

True, it may be argued that in practice, the board will invariably charge all expenses to the other town and thereby relieve their own town from all liability.    This may be so, but the Legislature has seen fit to place the power in their hands, evidently relying upon their judgment, honesty and sense of fairness, and it is not for the court to assume that the confidence has been misplaced.    If experience proves that fact, it is within the power of the Legislature to remedy the difficulty by statutory enactment.

The record in this case shows that the board of health of Eden considered the matter and demanded of the defendant town the amount actually paid out with no cost of services of the board.

It follows that the certificate of decision must be,

*Judgment for plaintiffs.*