CHARLES E. MILLETT, TREASURER OF CITY OF BANGOR

*vs.*

HAYES & CO., INC.

Penobscot.        Opinion, February 21, 1933.

*Ballard F. Keith*, for plaintiff.
*Fellows & Fellows*,
*Terrence B. Towle*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

PATTANGALL, C. J.   On report. Action of debt to recover a penalty under a city ordinance which provides that "no person shall erect, construct or maintain any building to be used as a public garage or gasoline filling station within the city limits . . . until a permit and license so to do has been issued to him by the municipal officers, who are hereby authorized to grant the same"; and which further provides that "Any person who shall operate or maintain any public garage or gasolene filling station without first complying with the above provisions, and who has not been granted a license so to do, shall be liable to a penalty not exceeding fifty dollars for every day he thus uses and maintains said garage or gasolene filling station."

Two issues are raised: (1) Whether or not the admitted acts of respondent were within the prohibition of the ordinance; and (2) whether or not the ordinance is valid.

We think that the first question must be answered in the negative and, therefore, it becomes unnecessary to consider the second.

The evidence is brief. The oral testimony of one witness, supplemented by documents and admissions, makes up the entire record. There is no dispute as to the facts. Such disagreement as exists concerns the inferences to be drawn from them.

It appears that defendant operated two gasoline pumps located on leased land in close proximity to a small two-story building, the second floor of which was occupied as a tenement. The first floor and basement were occupied in part by a firm of plumbers and in part by the defendant corporation, which neither had title to the building in whole or in part nor occupied as lessee nor, so far as the record shows, as a tenant at will. Its occupancy was limited to

storing certain drums of oil in the basement, keeping six glass containers of oil on a shelf and a cash register on a counter in a room on the street floor in which the plumbing firm also kept tools and merchandise. Defendant's manager sometimes, but not usually, stayed in this room when not engaged in serving customers. There was also a sign attached to one corner of the building which read "Fuel Oil Here" and on another corner a hose and a sign "Air." On the other side of the building there was a platform on which cars could be placed and by its side a pressure grease gun. On both of the windows which faced the street and on the street door were painted signs referring exclusively to business conducted by the plumbers, who also had a salesroom and office on the street floor, in which was installed a telephone listed in their names.

Defendant may fairly be said to have made use of the building or at least a small part of it in connection with its gasoline filling station, but in no sense of the word can it be said that it "maintained" the building for that purpose.

The ordinance in question here was enacted in 1927. It was amendatory of a former ordinance which read, in part, as follows: "No person shall erect, construct or maintain any building to be used as a public garage within the city limits nor alter any building already erected for such use nor use any building or structure for such purpose until a permit or license has been issued to him by the municipal officers who are hereby authorized to grant the same."

The important differences between the old ordinance and the new were that in the latter the words "gasoline filling station" were added after the words "public garage" and the words "nor use any building or structure" were omitted.

We are not called upon to decide whether or not on this record defendant might have been held guilty had the new ordinance corresponded with the old in every respect excepting the addition of the words "gasoline filling station." It does not so read. Plaintiff argues that the omission of the words quoted above was inadvertent and relies on the fact that the amendment was adopted in the following form:

"Be it ordained by the city council of the city of Bangor as follows:

Section 1. Chapter 13 of the Ordinances of the City of Bangor is hereby amended by adding after the words 'Public Garage' wherever the same may appear in any of the four sections of said chapter, the words 'or gasolene filling station' so that said chapter as amended shall read as follows:

### Public Garages or Gasolene Filling Stations.
### Chapter 13.

Section 1. No person shall erect, construct or maintain any building to be used as a public garage or gasolene filling station within the city limits, nor alter any building or structure for such purposes, until a permit and license so to do has been issued to him by the municipal officers who are hereby authorized to grant the same. To obtain such permit he shall first notify the building inspector and submit to him detailed plans and specifications of the structure to be thus constructed, altered or used. . . ."

Whether the amendatory words or the amendment as finally stated governs when they are inconsistent has been the subject of controversy, but we think the weight of opinion and the better reasoned position is that taken by this Court. In *Howard* v. *R. R. Co.*, 86 Me., 387, 29 A., 1101, 1102, the Court, speaking through former Chief Justice Peters, discussed the question in the following language:

"It may be said that no rule of universal application prevails as to whether the amendatory or the amended words shall govern the construction where there is a repugnancy between them. One clause may clearly show the legislative intent, and the other not. The consistency of either one may overrule the absurdity of the other. The real intention is to be ascertained if it can be. But the rule of interpretation which governs in cases generally, where any doubt or uncertainty exists, is that the last words control all preceding words for the purpose of correcting any inconsistency of construction. . . . Courts have quite uniformly held that where statutes have

been amended 'so as to read,' in a particular way, the statute as amended repeals or defeats all previous provisions inconsistent with it. . . ."

This view was reiterated and emphasized in *Stuart* v. *Chapman*, 104 Me., 22, 70 A., 1069, 107, where the Court said: "It is a familiar principle of statutory construction that a statute providing that a certain section of a prior act shall be amended 'so as to read as follows' repeals by necessary implication all of the section of the prior act which is not re-enacted."

Considering these precedents, we feel bound to regard the ordinance as having been amended so as to exclude from the list of forbidden acts the mere use of a portion of a building in the manner and to the extent shown by this record.

*Judgment for defendant.*