STATE of Maine

v.

David B. TAPLIN.

Supreme Judicial Court of Maine.

Nov. 29, 1968.

Daniel G. Lilley, Asst. Atty. Gen., Augusta, for plaintiff.

George S. Hutchins, Jr., York, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

David B. Taplin (defendant) was indicted by the Grand Jury at the May term, 1968, of the Superior Court in the County of York in this State for unlawfully selling on March 5, 1968 a narcotic drug, to wit, "Cannabis Sativa L." or "Cannabis Seed" (Docket No. 6103) and for unlawfully possessing such drug or having it under his control on March 7, 1968 (Docket No. 6105), both prosecutions purportedly being under 22 M.R.S.A. § 2362.

In each case Taplin, in preliminary objection to arraignment and trial upon these indictments charging felonies under the stated statute, by proper written motions, sought 'appropriate relief' under Rule 12(a) of the Maine Rules of Criminal Procedure requesting the Court to accept a plea of guilty to the charge of selling marijuana, a misdemeanor, under 22 M.R.S.A. § 2206, as amended by P.L.1967, c. 390, § 1.

In support of the motions, defendant contends that the felony statute under which these indictments were found had been repealed by implication and that the only 'viable' criminal statute respecting Cannabis sativa L. or marijuana was the 1967 misdemeanor act.

The motions were denied. The pleas of guilty to a misdemeanor charge were refused. Aggrieved by these interlocutory rulings, the defendant appealed and moved to report the legal question of statutory interpretation to this Court for solution. The Court below granted the motions upon the stipulation by the State and the defendant that "if the Law Court determines that Title 22 M.R.S.A. Section 2362 is repealed by implication by Title 22 M.R.S.A. Section 2206 (as amended by c. 390, s. 1), judgment of guilty shall be entered for the State and against the Defendant to the misdemeanor; and [the case] remanded to the Superior Court for sentence. Conversely, in the

event that the Law Court determines that sale [or possession] of marijuana is a felony violation under Title 22 M.R.S.A. Section 2362, the Defendant will stand trial on all viable felony charges consistent with the Law Court decision." Both cases were consolidated for purposes of hearing on appeal and are properly before us on report under Rule 37A, M.R.Cr.P.

The statutory sections presently involved read as follows:

*The felony.*

Title 22, Ch. 557, M.R.S.A. (1964)

"§ 2362. *Uses of narcotic drugs*

It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this chapter."

"§ 2380. *Violation of provisions*

Whoever violates any provision of this chapter shall upon conviction be punished by a fine of not more than $1,000 and by imprisonment for not less than 2 nor more than 8 years. For a 2nd offense, or if, in case of a first conviction of violation of any provision of this chapter, the offender shall previously have been convicted of any violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs or marihuana, the offender shall be punished by a fine of not more than $2,000 and by imprisonment for not less than 5 nor more than 15 years. For a 3rd or subsequent offense, or if the offender shall previously have been convicted 2 or more times in the aggregate of any violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs or marihuana, the offender shall be punished by a fine of not more than $5,000 and by imprisonment for not less than 10 nor more than 20 years.

Except in the case of conviction for a first offense for violation of this chapter, the imposition or execution of sentence shall not be suspended. Parole shall not be granted until the minimum imprisonment herein provided for the offense shall have been served."

*The misdemeanor.*

Title 22, Ch. 551, M.R.S.A. (1964)

"§ 2206. *Sale of opium*

No person, except a registered apothecary or a physician of regular standing in his profession, shall furnish, sell or keep for sale any opium, morphine, laudanum or preparations containing opium, morphine or derivative of opium. Whoever violates this section shall be punished by a fine of not less than $50 nor more than $1,000, for each offense, to be recovered by complaint or indictment."

Public Laws, 1967, Chapter 390

"Sec. 1. R.S., T. 22, § 2206, amended. The first sentence of section 2206 of Title 22 of the Revised Statutes is amended to read as follows:

No person, except a registered apothecary, *wholesaler, registered hospital pharmacy* or a physician of regular standing in his profession, shall furnish, sell or keep for sale any opium, morphine, laudanum, *marijuana* or preparations containing opium, morphine, *marijuana* or derivative of opium." (Italicized words were added by the amendment).

◼ The issue submitted to us on this report requires for solution a thorough analysis of the legislature history of both sections. In order to ascertain terminal legislative will, current competing statutes should be examined in the light of their respective antecedent enactments in their chronological sequence. Such studies do aid in the construction of coexisting statutes and significantly help to solve the recurrent issue whether two distinct legislative enactments can operate harmoniously as a whole or are so incongruous that a court must declare that one abrogates the other.

Such an examination at times will readily disclose that certain laws, seemingly in full force, have lost part or all of their legal vitality by repeal or amendment.

■ Before launching such a review, we must bear in mind certain well established principles of statutory construction respecting repeals by implication. Our Court has, in State v. London, 1960, 156 Me. 123, 162 A.2d 150, spelled out many of these well recognized rules of statutory interpretation and cited the authorities in support thereof. Thus, we observe that repeals by implication are not favored. Inman v. Willinski, 1949, 144 Me. 116, 65 A.2d 1, 7 A.L.R.2d 1390. The Legislature will not be presumed to have intended a repeal. Inhabitants of Eden v. Inhabitants of Southwest Harbor, 1911, 108 Me. 489, 81 A. 1003; Harris' Case, 1924, 124 Me. 68, 126 A. 166. However, implied repeals do exist and must be given effect based as they are on the rationale that "the legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law." Knight v. Aroostook Railroad, 67 Me. 291, 293. Nevertheless, implied repeals, provided no contrary legislative intent appears, will be restricted in scope to the extent of the inconsistency or conflict. State v. Bryce, 1968, Me., 243 A.2d 726.

We quote from *London*, supra: "[R]epeals by implication exist when a later statute covers the whole subject matter of an earlier statute, or when a later statute is repugnant to or inconsistent with an earlier statute.

\* \* \* \* \* \*

"Where a later statute does not cover the entire field of the earlier statute but is inconsistent or repugnant to some of its provisions, a repeal by implication takes place to the extent of the conflict.

\* \* \* \* \* \*

"Where a later statute imposes a different penalty, either less or more, for the same or substantially the same offense, the later statute is ordinarily held to repeal the earlier one."

■ It is for the court to determine legislative intent, which must prevail once that intention has been judicially ascertained. Lyon v. Lyon, 1896, 88 Me. 395, 34 A. 180. Legislative purpose and intent when obvious must be carried out irrespective of rules of interpretation, as the intention of the law maker is the law. Steele v. Smalley, 1945, 141 Me. 355, 44 A.2d 213; Emple Knitting Mills, Aplt. v. City of Bangor, 1959, 155 Me. 270, 153 A.2d 118.

We now turn our attention to the legislative history of these two reference criminal statutes to solve the problem before us, but, in order to present a clear display of the competing legislative purposes underlining the statutory fabric, it becomes necessary to probe deeply into the Legislature's past law-knitting.

We do observe that the misdemeanor statute, so-called, (22 M.R.S.A. § 2206) was first enacted as Chapter 124 of the Public Laws of 1887, and read as follows:

"Sect. 1. No person except a registered apothecary, or a physician of regular standing in his profession, shall furnish, sell or keep for sale any opium, morphine or laudanum.

"Sect. 2. Any person violating this act, shall be punished by a fine of not less than five nor more than fifty dollars for each offense, to be recovered by complaint or indictment."

Prior to the 1887 laws making it a crime for any person other than a registered apothecary, or a physician of regular standing in his profession, to furnish, sell or keep for sale any opium, morphine or laudanum, the Legislature had enacted

several laws concerning the business of an apothecary or druggist. Public Laws, 1857, c. 44, first regulated the sale of poisons by requiring the apothecary or druggist to properly label the parcel sold and record the sale. A registration law with a board of commissioners of pharmacy having powers of examination and certification was set up by P.L., 1877, c. 204. This act was amended by P.L., 1885, c. 379, and later amended by P.L., 1891, c. 105, P.L., 1893, c. 290, and P.L., 1897, c. 324. All this legislation, prior to 1899, except the reference 1887 act respecting opium, morphine and laudanum and the requirement of labeling and recording in sales of poisons, set up no other criminal restrictions regarding the possession of narcotic drugs. With the Public Laws of 1899, c. 96, we find the first comprehensive legislation relating to traffic in narcotic drugs by apothecaries. Aside from the 1887 act, which was not incorporated therein, the Legislature in the 1899 Law condensed all previous enactments respecting the conduct of the business of an apothecary, and among pertinent provisions new to the then existing law introduced criminal penalties for the *sale* of opium, morphia, laudanum and other poisonous drugs when made *without the written prescription of a physician, if the seller neglected to keep a detailed record thereof* or in the case of poisonous substances if the seller neglected to affix the label 'poison' to the bottle, box or wrapper containing the same. These punitive provisions of the 1899 law relating to the failure to record sales of opium, morphine and laudanum made without the written prescription of a physician and the 1887 prohibition against the furnishing, selling or keeping for sale of the same by any person other than a registered apothecary or a physician of regular standing in his profession, became respectively sections 17 and 19 of the 1903 revision of statutes. Both sections provided as maximum punishment a fine of $50.

The Legislature in 1913 took a second look at the regulations of sales of morphine and other hypnotic or narcotic drugs. By Chapter 211, sections 3, 6 and 8, pertinent legislation was enacted which in relevant parts read as follows:

"Section 3. No person shall sell, furnish, give away or deliver opium, morphine, heroin, codeine, cannabis indica or cannabis sativa, or any salt, compound or preparation of said substances except upon the written prescription or order of a lawfully authorized practitioner of medicine, dentistry or veterinary medicine * * *

* * * * * *

"Section 6. A person not being a physician, dentist or veterinary surgeon, qualified to practice in this state, or not being a manufacturer or wholesale or retail dealer in drugs, who has in his possession opium, morphine, heroin, codeine, cannabis indica, cannabis sativa or any other hypnotic or narcotic drug or salt, compound or preparation of said substances * * *, except by reason of a prescription of a physician, dentist or veterinary surgeon qualified to practice in this state, shall be punished as provided in section eight of this act. * * *

* * * * * *

"Section 8. A person who violates a provision of the foregoing sections * * shall be fined not more than one thousand dollars nor less than fifty dollars, or be imprisoned not more than one year, or both. * * * "

Under the 1913 enactment, no sale or dispensation of opium, morphine, cannabis sativa, or any salt, compound or preparation of said substances, could lawfully be made except upon the written prescription or order of a lawfully authorized practitioner of medicine, dentistry or veterinary medicine nor could any person other than such legally authorized practitioners, manufacturers or wholesale or retail dealers in drugs such as apothecaries have lawfully in their possession any of such drugs except by reason of a proper prescription. Both were made felonies since the act provided

as possible punishment a prison term of not more than one year. State v. Vashon, 1924, 123 Me. 412, 123 A. 511. The parties do not dispute the fact that Cannabis sativa has reference to marihuana (marijuana). See Attorneys' Dictionary of Medicine (Schmidt) Vol. I, 1968, defining marihuana as the leaves and other parts of the plant Cannabis sativa: a habit-forming substance used by addicts in the form of cigarettes. Laudanum, in Webster's New International Dictionary, is an ancient term for denoting any of various preparations of opium. The 1916 revised statutes carried both the misdemeanor 1887 legislation (c. 20, s. 19) and the felony 1913 enactments (c. 20, ss. 22, 25, 27).

At this stage in the legislative process, no inconsistency resulted from the coexistence of the misdemeanor and felony provisions of the act. The sale of the regulated drugs was a misdemeanor if made by any person other than a registered apothecary or physician of regular standing in his profession; but the sale of these same regulated drugs by any person with the additional proof that it was made without proper prescription was a felony. With equal analogy, the possession of these regulated drugs except by reason of a proper prescription was made a felony, (excluding of course doctors, dentists, veterinarians, manufacturers, and wholesale or retail dealers in drugs), while the possession of these same drugs by the same persons with the added proof that the drugs were being kept for sale would make the offender subject to the additional misdemeanor penalties. The Legislature, as with the Liquor problem, made separate and distinct crimes. See, State v. Wold, 1902, 96 Me. 401, 52 A. 909 (maintaining a liquor nuisance and illegal possession of the same liquor); State v. Inness, 1866, 53 Me. 536 (keeping a drinking house and tippling shop and being a common seller of intoxicating liquors); Taylor v. State, 5 Ga.App. 237, 62 S.E. 1048, cited in State v. Beaudette, 1922, 122 Me. 44, 118 A. 719 (keeping liquor for sale and a sale of the same liquor).

The 1930 revision similarly carried the identical criminal provisions in Chapter 23, §§ 19, 22, 25 and 27, except that the penalty of not more than one year had been substituted by Public Laws, 1929, c. 90, to the misdemeanor maximum of not more than 11 months. Thereafter, "preparations containing opium, morphine or derivative of opium" were added to the lesser misdemeanor (P.L., 1937, c. 160, § 9) and "any derivative of cannabis indica or cannabis sativa, either dried or in any cigarettes, tobacco, either smoking or chewing, or snuffing articles, or in any other form whatsoever" were inserted in the higher misdemeanor part of the statute. (P.L., 1939, c. 187, §§ 1 and 2).

This was the status of the law when the Legislature by Chapter 251 of the Public Laws of 1941 effected a major overhaul of the laws relating to narcotic drugs. The act was entitled "An Act Defining and Relating to Narcotic Drugs and to Make Uniform the Law with Reference Thereto." It carried in Section 1, definitions of all material terms used in connection with narcotic drugs, such as person, *physician,* dentist, veterinarian, manufacturer, wholesaler, *apothecary,* hospital, laboratory, *sale,* coca leaves, opium, cannabis, narcotic drugs, federal narcotic laws, official written order, *dispense,* and registry number. "Sale", as defined, was said to include "barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee." "Dispense", as defined, was said to include "distribute, leave with, give away, dispose of, or deliver."

In Section 2, the Legislature enacted a general and all-inclusive prohibition against dealing in narcotic drugs except as authorized by the very act it had decreed as the law. This is the original section which presently appears in identical terms as 22 M.R.S.A. § 2362.

The Act further provides for the licensing of all manufacture, cultivation or prep-

aration of narcotic drugs, setting up detailed standards as qualifications for applicants therein. The Act permits the sale and dispensation of narcotic drugs by duly licensed manufacturers or wholesalers on official written orders to several categories of persons among whom are: Sec. 5(1) (a) To a manufacturer, wholesaler, or *apothecary*. (b) To a *physician*, dentist, or veterinarian.

In Section 5(4), the Legislature in general and all-inclusive terms *made lawful* possession of or control of narcotic drugs "obtained as authorized by this section" if in the regular course of business, occupation, profession, employment, or duty of the possessor. The Act further controls sales of narcotic drugs by apothecaries and their professional use by physicians, dentists and veterinarians. It provides for records to be kept by all lawful dealers in narcotic drugs.

Penalties for any violation of the Act were set for the first offense at a fine of not more than $500 or imprisonment for not more than 6 months or both, and for any subsequent offense at not more than $5000 fine or not more than 5 years imprisonment or both.

Of major importance is the fact that there was a general repealer of all acts or parts of acts inconsistent with the enacted legislation and that the name of the Act was stated to be the Uniform Narcotic Drug Act.

The 1941 Act did not propose to legislate in the area of the licensing of apothecaries. In fact, it defined an apothecary as "a licensed pharmacist as defined by the laws of this state" and added that "nothing in this act shall be construed as conferring on a person who is not registered nor licensed as a pharmacist any authority, right, or privilege, that is not granted to him by the pharmacy laws of this state." To that extent only can the 1941 Act be said not to cover the entire field of the earlier statutes; in the area of narcotic drugs, it is absolute and· unconditional in its terms, general in application and all-embracing, whatever may be the particular situation. The penalties are substantially different from those of the previous statutes. Furthermore, the general repeal clause and the express indication by the law-makers that they were enacting a uniform narcotic drug act only serve to confirm in clear relief that Section 19 of Chapter 20, of the Revised Statutes of 1930, as amended by P.L., 1937, c. 160, § 9, was, without any judicial doubt, repealed by implication.

The whole tenor of the act shows that as regards the subject of narcotic drugs it was intended to supersede all previous laws relating thereto and to provide a new comprehensive code of regulations and controls complete in itself and in all respects. District of Columbia v. Hutton, 1891, 143 U.S. 18, 12 S.Ct. 369, 36 L.Ed. 60; Lawton v. Hand, 1958, 183 Kan. 694, 331 P.2d 886; Uniform Laws Annotated, Vol. 9B, Narcotic Drug, § 24, pp. 520–521. See, also Smith v. Sullivan, 1880, 71 Me. 150.

Even though repealed, the law providing a $50 fine for any person other than a registered apothecary or a physician of regular standing in his profession to furnish, sell or keep for sale any opium, morphine, laudanum or preparations containing opium, morphine, or derivative of opium, found its way into the several subsequent revisions. R.S.1944, c. 62, s. 17. R.S.1954, c. 68, s. 17. Nevertheless, "[i]f repugnant provisions of prior statutes are compiled and adopted in a general Revision of the Statutes, it must be presumed that the repugnancy was overlooked and that it was the intention of the Legislature to bring forward the latest expression of the legislative will where irreconcilable inconsistency or repugnancy appears in different sections of the Revised Statutes." Cram, Reg. of Deeds v. Inhabitants of County of Cumberland, 1953, 148 Me. 515, 96 A.2d 839; Lyon v. Ogden, 1893, 85 Me. 374, 27 A. 258. A former statute, once re-

pealed, becomes as if it had never existed. Coffin v. Rich, 1858, 45 Me. 507, 71 Am. Dec. 559.

The Legislature in 1963, however, attempted to amend the former repealed statute in this manner:

*P.L.1963, Chapter 332,*

"Sec. 8. R.S., c. 68, § 17, amended. The *last sentence* of section 17 of chapter 68 of the Revised Statutes is amended to read as follows:

'Whoever violates the provisions of this section shall be punished by a fine of not less than $5 $50 nor more than $50 $1,000, for each offense, to be recovered by complaint or indictment.' " [Emphasis added]

This amendment was incorporated into the 1964 Revised Statutes as 22 M.R.S.A. § 2206.

More complication and confusion arose when the Legislature in 1967 for the second time attempted to amend the former repealed statute, but on this occasion solely respecting the first sentence thereof in manner as follows:

*P.L.1967, Chapter 390,*

"Sec. 1. R.S., T. 22, § 2206, amended. The *first sentence* of section 2206 of Title 22 of the Revised Statutes is amended to read as follows:

No person, except a registered apothecary, *wholesaler, registered hospital pharmacy* or a physician of regular standing in his profession, shall furnish, sell or keep for sale any opium, morphine, laudanum, *marijuana* or preparations containing opium, morphine, *marijuana* or derivative of opium." [Emphasis added]

Some authorities hold that an amendatory act which attempts to amend an act which has previously been repealed, whether by express or implied repeal, is itself void and of no effect. Tiger Creek Bus Line v. Tiger Creek Transp. Ass'n, Inc.,

1948, 187 Tenn. 654, 216 S.W.2d 348; State v. Benton, 1892, 33 Neb. 823, 51 N.W. 140; Louisville & N. R. Co. v. City of East St. Louis, 1890, 134 Ill. 656, 25 N.E. 962; State v. Holt, 1948, 121 Mont. 459, 194 P.2d 651.

But the better rule seems to be that if the language intended to be inserted in a repealed statute, *when read alone,* has a clear and definite meaning, it will be treated as a valid and effective Act as if the amendatory Act were independent legislation, and the reference to the Act which it purports to amend will be regarded as surplusage. Mayor and Council of Wilmington v. State, 1947, Del., 5 Terry 332, 57 A.2d 70; Abrams v. Smith, 1923, 98 N.J.L. 319, 119 A. 792; Anderson v. Board of Com'rs of Douglas County, 1920, 67 Colo. 403, 186 P. 284; 82 C.J.S. Statutes § 245. An amendatory law introduced into the legislative mill by the legend "amended so as to read as follows," when explicit and complete in itself, may not be disregarded or invalidated because of a possible mistake of the Legislators with respect to the valid existence of the statute which the amendatory act as passed purports to amend. Daugherty v. Powell, 1903, 67 Kan. 857, 72 P. 274, 74 P. 242; Columbia Wire Co. v. Boyce, 1900, C.C.A., 7th Cir., 104 F. 172.

No constitutional or statutory barrier exists in Maine barring judicial adoption of such a rule. In fact, our Court has recognized the potential of 'so as to read' amendatory legislation. Millett v. Hayes & Co., 1933, 132 Me. 12, 164 A. 741. In Lowell v. Washington County Railroad Co., 1897, 90 Me. 80, 37 A. 869, a private act providing that "[T]he time for the location and construction of the Washington County Railroad Company, incorporated under chapter fifty-four of the private acts of eighteen hundred and ninety-three, is hereby extended to four years from the date of approval of this act, and all the provisions of said chapter shall be and remain in force during said four years" was given

effect even though the reference chapter should have been 454 instead of 54. By analogy to our problem, the Court said: "The latter act identifies the railroad, eo nomine; and it would be puerile to hold, that, because of the mistaken number of the chapter, the later act did not apply to the original charter of 1893."

The 1963 amendment (P.L., 1963, c. 332, § 8), standing alone without restatement of the previously repealed first sentence of R.S. c. 68, § 17, was insufficient to effect a revival of that part of the repealed legislation and the enactment of statutory penalties without the coexistence of a corresponding code of duties to violations of which they may apply merely resulted in a legislative exercise in futility. That amendment was null and void.

The 1967 amendment, however, (P.L., 1967, c. 390, § 1) can stand alone, but, without specific coexisting legal penalties to enforce any violation of its provisions, it raises no shadow of repugnancy or inconsistency with the terms of 22 M.R.S.A. §§ 2362, 2380 and under no circumstances can be viewed as an implied repeal of any part thereof.

Both, the sale and possession of marijuana are felonies under 22 M.R.S.A. §§ 2362, 2380 and, therefore, defendant's appeal in each case is denied.

In accordance with the stipulation of the parties, the entry must be:

Appeal denied. Each case remanded to the Superior Court. Defendant to stand trial in each case on the respective felony charges under 22 M.R.S.A. §§ 2362, 2380 upon indictments docketed at No. 6103 and 6105 in the court below.

So ordered.